In re AURORA INVESTMENTS,
INC., Debtor.

In re MOHAN KUTTY TRUST, Debtor.

Bankruptcy Nos. 91–4129–
8P1, 91–6011–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 7, 1992.

Richard A. Zeller, Clearwater, Fla., for debtor.

Barnett Bank of the Suncoast, NA, c/o Catherine McEwen, Francis H. Cobb, Tampa, Fla., for Barnett Bank.

## ORDER ON MOTIONS FOR SANCTIONS

ALEXANDER L. PASKAY, Chief Judge.

These are dismissed Chapter 11 cases and the matters under consideration are Motions for Sanctions filed by Barnett Bank of the Suncoast, N.A. (Barnett) against the Debtors Aurora Investments, Inc., (Aurora), and Mohan Kutty Trust (MKT), Mr. Mohan Kutty (Mr. Kutty), and/or their attorney, Richard A. Zeller

(Mr. Zeller). The procedural background of these two Debtors and the events relevant to a resolution of the Motions presently under consideration would be helpful.

Aurora filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on April 2, 1991. The Petition was signed by Mr. Kutty as President of Aurora and Mr. Zeller as counsel of record for Aurora. Barnett shortly thereafter filed a motion to dismiss the Chapter 11 case for cause, that is, bad faith filing, pursuant to 11 U.S.C. § 1112(b) of the Bankruptcy Code. On May 9, 1991, the date of the hearing on Barnett's Motion to Dismiss Aurora's Chapter 11 case, MKT filed its Chapter 11 Petition. This Petition was also signed by Mr. Kutty as Trustee of MKT and Mr. Zeller as counsel for MKT. Barnett promptly filed a Motion to Dismiss the MKT case also.

On December 3, 1991, and December 11, 1991, this Court entered orders granting Barnett's Motions to Dismiss both the cases of Aurora and MKT for "cause" under § 1112(b) of the Bankruptcy Code. In its Orders of Dismissal this Court specifically found that these two cases were filed in bad faith and in addition, in the case of MKT, this Court also determined that MKT was not eligible for relief under Chapter 11 because it was not a business trust as required by § 101(9)(A)(v). This Court subsequently entered Orders which expressly reserved jurisdiction to consider any requests by Barnett for the imposition of sanctions if Barnett decided to file such motions. Barnett did in fact file its motions in each case. These are the motions under consideration.

It is undisputed that the only asset of any consequence in which these two Debtors purported to have any interest is a six-acre tract of real property on which an Adult Congregate Living Facility (ACLF) is built and on which Barnett holds a first mortgage. It is further without dispute that neither Debtor owned the ACLF at the time they filed their respective Petitions. Instead, the land on which the ACLF is located is owned, according to the public records of Hernando County, by "Mohan Kutty, as Trustee," and the ACLF is owned and operated by Hernando Woods, Ltd. (Hernando), a Florida general partnership in which Aurora is a general partner.

At the time of the filing of these cases, MKT had no assets to reorganize, and Aurora's only asset to speak of was a license issued to Aurora and Hernando jointly by the State of Florida to operate the ACLF. In this connection, it is evident that Hernando was in full charge of the operations of the ACLF, collected all fees paid by the patients, hired and discharged the employees of the facility and paid all operating expenses of the ACLF. Further, at the time Aurora filed its Petition, it was an inactive corporation and had been dissolved by the Secretary of State. Neither Aurora nor MKT had any employees; neither of them ever conducted any business in an orthodox sense; and it is evident that their bankruptcy petitions were filed, at least apparently, for the sole purpose of delaying the foreclosure sale of the ACLF scheduled by the Circuit Court at the request of Barnett, which obtained a final judgement of foreclosure on December 10, 1990.

In this connection it should also be noted that prior to the hearing on Barnett's Motion for Summary Judgment in the foreclosure action, Barnett and the Defendants named in the foreclosure proceeding, including the Debtors, entered into a Stipulation for Settlement. The Stipulation provided, *inter alia,* that the Defendants consented to the entry of a Summary Final Judgment in favor of Barnett and that Barnett would not schedule a foreclosure sale earlier than April 2, 1991 in order to give the Defendants an opportunity to refinance the facility and pay off the amount due to Barnett. Paragraph 12 of the Stipulation provides in part:

> The Debtors acknowledge that if they or any one of them files a petition in bankruptcy, (i) such filing will be in bad faith if the primary purpose of the filing is to delay the foreclosure sale date beyond April 2, 1991, or collection of the judgment indebtedness, and (ii) the Bank's interest in the property cannot be ade-

quately protected absent foreclosure of its mortgage lien/security interest.

As noted earlier, both Petitions for Relief were signed by Mr. Kutty and Mr. Zeller. In Paragraph 4 of its Petition, Aurora stated that it intended to file a Plan of Reorganization. The Petition of MKT contained the same statement. It should be noted that the Debtors did not file Plans of Reorganization or Disclosure Statements in either case. The cover sheet filed with the Petition of MKT, signed by Mr. Zeller, stated that MKT "owns, manages, and operates Hernando Woods, a 120 bed A.C.L.F.," a statement patently incorrect and not true.

During the pendency of these two cases, Mr. Zeller filed Motions to Extend Time to File Schedules. These Motions both stated that MKT's and Aurora's books of account were in the process of being posted and that an extension of 20 days was necessary in order to prepare the Schedules and Statements of Financial Affairs. In the case of MKT, the Schedules which were ultimately filed were signed by Mr. Kutty on May 16, 1991, before the Motion for Extension of Time to File Schedules was even filed by Mr. Zeller. Moreover, the operating reports filed by Aurora and MKT indicate that the Debtors did not operate *any* business at the time the Petitions were filed, and thus the statements that the books of account were in the process of being posted were patently false.

It is without dispute that both Mr. Zeller and Mr. Kutty signed Aurora's and MKT's Applications for Authority to Remain in Possession and to Operate Business. In the Motions it was stated that Aurora has engaged in the health care/retirement home business for three and one-half years and has continued in possession of its properties, and that MKT "was principally engaged in the management of its property consisting of the 6–acre parcel upon which is situate the A.C.L.F. known as Hernando Woods, which is held in trust for the benefit of Aurora ..." However, as noted before, Aurora and MKT did not operate any business at the time the Petitions were filed, and did not own the business they were apparently seeking to reorganize.

In addition, Mr. Kutty signed Applications to Employ Attorney in which he stated that MKT has continued the management of its property and that Aurora has continued the operation of its business consisting of "health care/retirement home," and in both cases, that the Debtors are now operating their business and managing their property. Finally, Mr. Zeller signed Motions to Consolidate the cases of Aurora and MKT, which stated that the assets and liabilities of the two Debtors are identical. As noted previously, MKT did not have a license to operate an ACLF, but Aurora did. Further, Aurora is a general partner of Hernando Woods, Ltd., although MKT is not. Thus, the statement that the assets of the two Debtors are identical was clearly false.

Based on these facts, Barnett contends that sanctions should be imposed against Mr. Kutty and Mr. Zeller under three alternative theories: (1) this Court's inherent power to impose sanctions, such as the imposition of attorney's fees, for the full range of litigation abuses, including bad faith conduct; (2) F.R.B.P. 9011, the certification rule; and (3) 28 U.S.C. § 1927.

In support of its first argument, Barnett relies on the case of *Chambers v. Nasco,* —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), where the Supreme Court affirmed the lower court's use of its inherent power to impose a sanction of approximately $996,000 on a litigant, found to have conducted frivolous litigation. The sanction represented attorney's fees and litigation costs incurred by the opposing party as a result of a variety of litigation tactics and the egregious manner in which the litigation was conducted. The Court held in *Chambers* that notwithstanding 28 U.S.C. § 1927 and Federal Rule 11, federal courts have the inherent power and authority to impose sanctions for litigation abuses. In response to the argument that a court has no greater authority to impose sanctions than the authority set forth in statutes and rules such as 28 U.S.C. § 1927 and F.R.C.P. 11, the Court said:

We discern no basis for holding that the sanctioning scheme of the Statute and

the Rules displaces the inherent power to impose sanctions for the bad faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than the other means of opposing sanctions. First, whereas each of other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill the interstices.

*Id.*, —— U.S. at ——, 111 S.Ct. at 2134.

■ Based on the teachings of *Chambers*, it is clear that this Court has the discretion and power to sanction Mr. Zeller, Mr. Kutty or the Debtors for their bad faith conduct in filing these Chapter 11 cases without a legitimate need to reorganize the affairs of these Debtors.

■ Next, Barnett relies on 28 U.S.C. § 1927, which authorizes a court to impose as a sanction the excess costs, expenses and attorney's fees caused by an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." Under 28 U.S.C. § 1927, sanctions may only be imposed against an attorney and not the litigant itself. *F.T.C. v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986).

Finally, Barnett relies on F.R.B.P. 9011, which addresses pleadings and documents filed in a case which are signed by an attorney or by a party. It requires that every document filed in a bankruptcy case be signed by an attorney or a party, and that the signature thereon constitutes a certificate that the document is well grounded in fact (to the best of the signer's knowledge, information and belief formed after reasonable inquiry), and that the document is not interposed for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation or administration of the case.

In support of their argument that Mr. Zeller and Mr. Kutty have violated F.R.B.P. 9011, Barnett relies on cases such as *In re*

*Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3rd Cir.1985), where $3,000 in attorney's fees were imposed for filing a bankruptcy petition in bad faith; *In re Grand Hotel Ltd. Partnership*, 121 B.R. 657 (S.D.Fla.1990), where the district court affirmed a sanction of approximately $27,000 in lost interest and $10,000 in attorney's fees caused by filing a bankruptcy petition in violation of F.R.B.P. 9011 on the day of the foreclosure sale; *In re Terra of America Trading, Inc.*, 109 B.R. 516 (Bankr.S.D.Fla.1989), imposing a sanction of $5,000 for filing a bankruptcy petition in bad faith on the day of a foreclosure sale; and *In re Winn*, 53 B.R. 645 (Bankr. M.D.Fla.1985), where this Court imposed both attorney's fees and costs for filing a bankruptcy petition in bad faith.

In opposition to all of the foregoing, Mr. Kutty, the Debtors and Mr. Zeller contend that the Debtors intended to file plans of reorganization and in fact had drafted plans in late October, but decided to wait to file the plans until after the resolution of the Motions to Dismiss. To explain the patently false statement made in the Motion for Extension of Time to File Schedules in the case of MKT, Mr. Zeller stated that although the schedules had been signed, he wanted to verify the information before filing them.

■ Upon consideration of the record, this court is satisfied that both Motions are well taken and should be granted. While there is no question that this Court may rely on its inherent power to impose sanctions, as stated by the Supreme Court in *Chambers*, "when there is bad faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the Court ordinarily should rely on the Rules rather than the inherent power.", *supra*, —— U.S. at ——, 111 S.Ct. at 2135–2136. As this Court finds sufficient basis to award sanctions under F.R.B.P. 9011, it is unnecessary to rely on either this Court's inherent power to impose sanctions or on 28 U.S.C. § 1927.

■ This Court is satisfied that both Mr. Kutty and Mr. Zeller have been guilty of

signing the Petitions in violation of F.R.B.P. 9011. This Court is also satisfied that these Debtors had no intention of filing Plans of Reorganization as stated in the Petitions and that neither of the Petitions were filed to achieve a legitimate goal. Instead, they were filed for an improper purpose, and not for the purpose of achieving reorganization under the Code. Aurora had no property to reorganize, and neither did MKT. By filing these Petitions for Relief, the Debtors frustrated Barnett's attempt to complete its foreclosure of its mortgage encumbering the ACLF for approximately eight months, in spite of the fact that the Defendants in the foreclosure action conceded to the foreclosure.

Further, Mr. Zeller violated F.R.B.P. 9011 when he signed the Motions for Extension of Time and Motions to Consolidate, which were not well grounded in fact. Mr. Kutty also violated F.R.B.P. 9011 when he signed the Applications for Authority to conduct Business and to Employ Attorney, which contained statements without a factual basis.

■ There can be no question that during the delay caused by the bad faith filing of these cases, Barnett was forced to incur substantial attorneys fees and costs. According to counsel for Barnett, fees for services rendered after the filing of the bankruptcy cases total $14,418.50 and costs incurred total $2,195.20. Upon a review of the time records in support of these fees, this Court is of the opinion that a reasonable fee for services rendered is $10,000.00, and reasonable costs are $2,195.00.

■ F.R.B.P. 9011 provides that this Court shall impose sanctions, which may include a reasonable attorney's fee and costs, on the person who signed a paper in violation of F.R.B.P. 9011, the represented party or both. Therefore, this Court is satisfied that Mr. Kutty, Mr. Zeller and these Debtors should be compelled to pay these fees and costs to Barnett.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motions for Sanctions are hereby granted, and sanctions are imposed jointly and severally against Mohan Kutty Trust, Aurora Investments, Inc., Richard Zeller and Mohan Kutty, who are hereby directed to pay to Barnett Bank of the Suncoast, N.A. the sum of $10,000.00 in attorney's fees and $2,195.20 in costs for a total of $12,195.20, within 30 days of the date of the entry of this Order.

DONE AND ORDERED.