## In re VIII SOUTH MICHIGAN AS-SOCIATES, An Illinois Limited Partnership, Debtor.

### Bankruptcy No. 91 B 25677.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 16, 1994.

John Anderson, Gus Paloian for Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Northern Trust Co., movant.

Douglas Gowan, The Capital Group, Inc., Milwaukee, WI, for respondent and counter-movant.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

## I. INTRODUCTION

The matter before the court is a motion for sanctions by the Northern Trust Company ("Northern") against Douglas Gowan ("Gowan"), Gowan's motion to dismiss the Northern's motion, and Gowan's counter-motion for sanctions against the Northern and its attorneys.

VIII South Michigan Associates ("Debtor") is a limited partnership which held a leasehold estate interest in certain improved commercial real estate located at 8 South Michigan Avenue in Chicago. The Northern was the Debtor's secured lender, with a security interest in, amongst other collateral, the Debtor's leasehold interest and the improvements thereon. Gowan was employed as an expert witness by (i) the Debtor, (ii) Eight South Development Corporation ("Eight South"), the Debtor's general partner, and (iii) the four individuals who had personally guaranteed the Northern's loan. These individuals are James Loewenberg, Marvin Fitch, Paul Cocose, and William Cocose (collectively "Guarantors"). The Guarantors were also officers and shareholders in Eight South as well as limited partners of the Debtor.

For the reasons set forth below, the court will (i) deny as a matter of law the Northern's motion for sanctions; (ii) grant Gowan's motion to dismiss, which the court treats [1] as one to deny the relief requested as

---

1. Gowan has proceeded *pro se* in these proceedings. Accordingly, "[a]llegations in pro se pleadings are to be construed liberally, applying substantially less stringent standards than those applied to pleadings drafted by professional counsel." *Kincaid v. Vail*, 969 F.2d 594, 598 (7th Cir.1992) (citations omitted), *cert. denied,* — U.S. ——, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993); *see also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (*per curiam*); *Merritt v. Faulkner,* 697 F.2d 761, 766 (7th Cir.), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). The trial court must "ensure that the claims of *pro se* litigants are given 'fair and meaningful consideration.'" *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984) (citation omitted). Moreover, a *pro se* litigant need not use particular "buzz words" to obtain relief, as long as the nature of the claim is apparent. *See Woods v. Thieret,* 903

a matter of law; and (iii) deny Gowan's counter-motion for sanctions, which the court treats as one invoking FED.R.BANKR.P. 9011 and the court's inherent authority.

## II. JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding, as "[p]roceedings for sanctions are core proceedings when the sanctioned conduct occurs in the course of a core proceeding." *In re VIII South Michigan Associates*, No. 94 C 5593, slip op. at 9, 1994 WL 698489, at *5 (N.D.Ill. Nov. 29, 1994) (citing, *inter alia, In re Memorial Estates, Inc.*, 950 F.2d 1364, 1370 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992)). Gowan's involvement in the proceedings pertained to the settlement between the Trustee on behalf of the Debtor's estate and the Northern. The "settlement clearly concerned the administration of the estate [*see* 28 U.S.C. § 157(b)(2)(A) ], and was thus a core proceeding for Section 157 purposes." *Id.* (footnote omitted).

## III. BACKGROUND

The Debtor commenced a Chapter 11 proceeding under Title 11 of the United States Code on December 3, 1991. Judge Robert Ginsberg presided over the case at the outset. On July 27, 1992, Judge Ginsberg granted the Northern's motion to convert the case to Chapter 7 and William Grabscheid was appointed trustee ("Trustee"). The Trustee employed Ronald R. Peterson, David M. Neff, and the law firm of Jenner & Block as his attorneys. On February 13, 1992, Gowan was retained by James Loewenberg as an expert witness in this bankruptcy case on behalf of the Debtor and the Guarantors.[2]

On January 7, 1992, the Northern filed a motion to lift the automatic stay pursuant to 11 U.S.C. § 362(d), in order to proceed with the foreclosure proceedings it had initiated in state court one month prior to the commencement of this case. Judge Ginsberg granted the Northern's motion to lift the stay on July 21, 1992. Meanwhile, the Debtor and the Guarantors filed affirmative defenses and counterclaims in the state foreclosure action, which were subsequently dismissed with prejudice, with leave to amend as to only one defense. The Northern proceeded with its foreclosure action and the Debtor was held in default for failure to answer or otherwise plead. Gowan has admitted that he was retained as an expert witness in the state court proceedings.

The Northern and the Trustee proposed a settlement of any and all claims the estate may have had against the Northern. On March 22, 1993, the Trustee filed a motion for authority to enter into a settlement agreement with the Northern on behalf of the Debtor's estate. The Guarantors opposed the Trustee's motion. The Northern filed a reply in support of the Trustee's motion and the Guarantors responded. Prior to the hearing, Gowan was listed as an expert witness for the Guarantors. In addition, Gowan joined with James Loewenberg (signing on behalf of the Guarantors) in verifying supplemental answers to interrogatories.

Prior to the hearing on the settlement motion, Judge Ginsberg recused himself. On July 30, 1993, the case was reassigned to Chief Judge Schwartz. The Northern and the Trustee renegotiated the settlement, and, after notice and a hearing, this court granted the Trustee's motion and approved the renegotiated settlement agreement with the Northern. (Order of November 8, 1993.) The Guarantors appealed this order and the District Court for the Northern District of Illinois granted the Northern's motion to dismiss the appeal. *In re VIII South Michigan Associates*, 167 B.R. 877 (N.D.Ill.1994).

F.2d 1080, 1082 (7th Cir.1990) (*per curiam* ). In light of the foregoing, this court has liberally construed Gowan's motions so as to ensure he receives full and fair consideration.

**2.** Although James Loewenberg signed the retention letter in the name of the Debtor, the capacity in which he signed is unclear, as, at the time he signed, he was the president of the Debtor's general partner (Eight South), a shareholder in Eight South, a limited partner in the Debtor, and a guarantor of the Northern's loan.

On February 7, 1994, the Northern filed its motion for sanctions against Gowan. Gowan, acting *pro se*, filed numerous responses to this motion for sanctions, including a response, a motion to dismiss, a counter-motion for sanctions, and various supplemental filings. The central legal issue is whether the court has the inherent authority to sanction a non-party expert witness who has not appeared in court, testified in any proceeding, nor violated a court order. Although there is some case authority on this subject, the precise issue appears to be one of first impression. Though not a "cow case," that is, one on all fours, the Supreme Court's decision in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), is determinative of the Northern's motion.

## IV. THE LITIGANTS' ARGUMENTS

### A. The Northern's Arguments

The Northern contends that this court, based upon the Supreme Court's opinion in *Chambers v. NASCO, Inc.*, has the inherent authority to issue sanctions against Gowan. The Northern argues that amongst its inherent powers, a federal court has the power to impose sanctions for bad faith litigation abuses. In addition, the Northern argues that because a federal court can sanction non-parties for violation of its orders, this court can sanction Gowan for his conduct.

Essentially, the Northern argues that Gowan has acted like a party or like an attorney and should therefore be treated as such. Gowan, the Northern contends, has acted well beyond the normal role of an expert witness and has in effect been an advocate for the Guarantors. The Northern alleges that Gowan virtually directed the litigation on behalf of the Guarantors from the time he was retained. He allegedly developed the Guarantors' legal strategy, including citing cases to the Guarantors' attorneys and outlining responses to motions on behalf of the Guarantors. The Northern also argues that Gowan used his status as an expert witness to skirt the outer limits of the legal

system and evade the typical strictures imposed on parties and their attorneys.

But, more simply, the Northern maintains that Gowan has engaged in bad faith litigation conduct. The Northern asserts that Gowan conducted a campaign of intimidation against the Northern and its counsel, with the alleged intent to prevent the Northern from pursuing its claims against the Guarantors. For example, Gowan threatened to sue some of the Northern's principal shareholders, directors, senior officers, and employees and made false allegations to the Federal Reserve Board. The Northern asserts that, in writing the Federal Reserve and in filing his pleadings in this matter, Gowan has ignored prior findings and orders of this court to the effect that his theories lack any basis under applicable law (Order of November 8, 1993).

In response to Gowan's contention that he is not properly before this court, the Northern responds with numerous examples in support of its position that Gowan was directly involved in the bankruptcy case, including that Gowan consulted with the Debtor's bankruptcy counsel regarding the conduct of the case, that Judge Ginsberg recognized Gowan as an expert witness for the Debtor, and that Gowan was identified and named as an expert witness on behalf of the Debtor for the hearing on the Debtor's proposed plan of reorganization. Finally, the Northern contends that even if this court lacks the authority to issue sanctions against Gowan, Gowan has nevertheless waived his jurisdictional defense by filing a counter-motion for sanctions.

### B. Gowan's Arguments

The main thrust of Gowan's argument is that this court lacks the authority or jurisdiction to impose sanctions upon him as a non-party expert witness.[3] In support of this argument, Gowan contends that he is neither a party nor an attorney for a party in the bankruptcy litigation and therefore he is not before this court for the purposes of the sanctions sought by the Northern. Gowan

---

**3.** The court notes that Gowan has made numerous responses, allegations, and accusations regarding the matter before the court. However, the court will set forth only those arguments that the court has distilled as germane to the issues at hand.

further argues that he has never appeared before nor testified in this court. Moreover, although he admits he was an expert witness in the state court litigation, he denies that he is or has been retained as an expert witness in the bankruptcy litigation.

Gowan further disputes the notion that he developed legal strategy or directed the litigation. Rather, he contends he merely furnished his opinion as to the state court litigation, promoted settlement, and expressed his views as an expert. He also argues that imposing sanctions against an expert witness for expressing his opinion will have a chilling effect on experts' willingness to furnish their opinion, and he has suggested possible First Amendment infringements. Curiously, Gowan admits he has no standing to sue, yet he nevertheless filed a counter-motion for sanctions, wherein he alleges the filing of frivolous motions, abusive litigation conduct, acts of perjury, subornation of perjury, bad faith conduct, harassment, oppression, evidentiary and witness tampering, and the commission of fraud upon this court. Finally, Gowan asserts that he has not waived his jurisdictional defense.

## V. ANALYSIS

### A. Inherent Authority

The court must decide whether a bankruptcy court, or, for that matter, any federal court, has the inherent authority to sanction a non-party expert witness where that non-party expert witness has not violated a court order[4], testified in any proceeding, nor appeared before the bankruptcy court.

■ All federal courts, by virtue of their creation and existence, have certain inherent powers, including the power to sanction for bad faith litigation conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 47, 111 S.Ct. 2123, 2132, 2134, 115 L.Ed.2d 27 (1991). In *Chambers*, the Supreme Court found that the

district court had not abused its discretion in imposing sanctions against a party in the form of attorney's fees as a consequence of the party's litigation abuses. *Id.* at 50, 111 S.Ct. at 2135. The party, Chambers, was the owner of a television station who had agreed to sell his station to NASCO but then reneged on the deal. *Id.* at 37, 111 S.Ct. at 2128-29. NASCO then sued Chambers for specific performance in federal district court, won the suit, and prevailed on Chambers' appeal to the Fifth Circuit. *Id.* at 39-40, 111 S.Ct. at 2129-30. The Fifth Circuit found the appeal frivolous, imposed appellate sanctions, and remanded for a determination of the amount of appellate sanctions as well as the propriety of issuing further sanctions. *Id.* at 40, 111 S.Ct. at 2130. On remand, NASCO moved for sanctions and the district court imposed sanctions under its inherent authority. *Id.* at 40, 111 S.Ct. at 2130.

Chambers was sanctioned for, *inter alia,* attempting to deprive the district court of jurisdiction by acts of fraud, most of which were performed outside the confines of the district court, and for attempting to reduce NASCO to exhausted compliance through tactics of delay, oppression, harassment, and massive expense. *Id.* at 41-42, 111 S.Ct. at 2130-31. Some of the sanctioned conduct occurred between the time Chambers received notice of NASCO's intent to file, a Friday, and the time of actual filing, the following Monday. *Id.* at 36-37, 111 S.Ct. at 2128-29. Significantly, the Court upheld the district court's sanctioning of Chambers for activities undertaken prior to becoming a party or subject to court order. *Id.* at 50-51, 57, 111 S.Ct. at 2135-36, 2139. The Court drew no distinction between Chambers' conduct after he had notice and his conduct post-filing.

In affirming the lower courts, the Supreme Court found that "[i]t has long been understood that '[c]ertain implied powers must

---

4. Although the Northern references a court order of July 29, 1993 barring direct contact by Gowan with the Northern and its counsel, the Northern has not specifically requested sanctions for any alleged violations of this order. *See also* Order of July 8, 1994 (reaffirming protective order of July 29, 1993). Rather, the Northern has asserted that Gowan has circumvented that Order by

writing to the Federal Reserve and sending copies to the Northern's counsel. The Northern merely cited this alleged conduct as one incident on a list of several that the Northern contends support a finding of bad faith conduct. As such, no specific sanctions have been sought for the alleged circumvention of the court's Order, and the court will therefore not address that issue.

necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers,* 501 U.S. at 43, 111 S.Ct. at 2132 (quoting *United States v. Hudson,* 11 U.S. 32, 34 (7 Cranch), 3 L.Ed. 259 (1812) and citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). The Court noted that these powers are "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers,* 501 U.S. at 43, 111 S.Ct. at —— (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)).

■■■ The Court further noted that under the third exception to the American Rule against fee-shifting, "a court may assess attorney's fees when a *party* has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers,* 501 U.S. at 45–46, 111 S.Ct. at 2133 (emphasis supplied) (citations omitted). A court may also assess attorney's fees if it finds that a fraud has been committed upon it or if it finds bad faith conduct through delay or disruption. *Id.* at 46, 111 S.Ct. at 2133. A finding of bad faith conduct or of fraud is necessary for a court to invoke its inherent powers to impose sanctions. *Id.* at 50–51, 111 S.Ct. at 2135–36; *see also Amsted Industries Inc. v. Buckeye Steel Castings Co.,* 23 F.3d 374, 378 (Fed.Cir.1994). Furthermore, while Rule 11 and 28 U.S.C. § 1927 may be applicable in a particular case, they are not substitutes for the inherent power, as "the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices." *Chambers,* 501 U.S. at 46, 111 S.Ct. at 2134.

■■■ Inherent powers, due to their potency, must be exercised with restraint and caution. *Id.* at 44, 50, 111 S.Ct. at 2132, 2135. When invoking its inherent powers, a court "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* at 50, 111 S.Ct. at 2136 (citation omitted). Finally, "[a]s long as a *party* receives an

appropriate hearing, ... the *party* may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Id.* at 57, 111 S.Ct. at 2139 (emphasis supplied) (citations omitted).

■■■ The principles enunciated above apply equally as well to the bankruptcy court. *See In re Generes,* 165 B.R. 1011, 1020–21 (N.D.Ill.1994). As a unit of the district court pursuant to 28 U.S.C. § 151, a bankruptcy court is a federal court. *In re Maurice,* 167 B.R. 114, 130 (Bankr.N.D.Ill.1994). As a federal court, the bankruptcy court has the inherent authority to sanction a party for bad faith conduct in litigation. *Id.*

■■■ Given this court's conclusion that it has the inherent authority to impose sanctions on a party for abusive litigation practices, the court must decide whether this authority extends to imposing sanctions on a non-party expert witness who has not appeared before the court, testified in any proceeding, nor violated any order of the court. In other words, the Northern has asked this court to extend *Chambers* to non-party expert witnesses. For the reasons set forth below, the court declines this invitation.

The decision in *Chambers,* if read broadly, might be used to support a holding that a court has the inherent authority to sanction any person or entity that is responsible for an abuse of the legal system. However, the court declines to read *Chambers* so broadly and instead concludes that *Chambers* should be limited to parties and their counsel. First, the only sanctions before the Supreme Court in *Chambers* were the sanctions imposed on Chambers himself in his capacity as a party. Second, throughout the opinion, the majority of the Court suggested that the inherent power should be limited to imposing sanctions on parties and their counsel. For example, the majority framed the issue to be decided as one dealing with the inherent power of a federal court to sanction a "litigant" or a "party" for bad faith conduct. *Chambers,* 501 U.S. at 35, 111 S.Ct. at 2127. In addition, the majority consistently couched its conclusion in terms of sanctions against a "party." For example, attorney's fees may be assessed "when a *party* has

'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45–46, 111 S.Ct. at 2133 (emphasis supplied) (citations omitted).

Moreover, there is no indication that the Court considered whether non-parties were also subject to the inherent power. Although the Court upheld the sanctions imposed on Chambers before he was formally a party, this can be explained by recognizing "that once Chambers received notice pursuant to Rule 65, Chambers was about to become a party, and that it made no logical sense to distinguish Chambers' conduct over the weekend from his conduct after suit was filed." *Helmac Products Corp. v. Roth (Plastics) Corp.,* 150 F.R.D. 563, 565–66 (E.D.Mich.1993). Furthermore, the Supreme Court could have adopted a bright-line rule that conduct is sanctionable only after one becomes a party, yet it did not do so. *See id.* at 566. This court concludes that the Supreme Court in *Chambers* did not contemplate application of the inherent authority to impose sanctions for bad faith litigation conduct to a non-party expert witness who has not appeared before the court and has not violated a court order.

This court also heeds the Supreme Court's mandate that "[a] court must, of course, exercise caution in invoking its inherent power" and inherent powers "must be exercised with restraint and discretion." 501 U.S. at 50, 44, 111 S.Ct. at 2136, 2132. *See also United States v. Fidelity and Deposit Co. of Maryland,* 986 F.2d 1110, 1120 (7th Cir.1993) (*Chambers* "emphasizes that the imposition of sanctions, including attorneys' fees, on the basis of the court's inherent power is to be undertaken with great circumspection"). Therefore, this court, in exercising restraint and discretion, holds that the decision in *Chambers* can not, under these circumstances, be extended to a non-party expert witness who has not appeared before the court and has not violated a court order.

Support for this conclusion is found in *In re Rainbow Magazine, Inc.,* 136 B.R. 545 (9th Cir. BAP 1992). In *Rainbow,* the bankruptcy court assessed sanctions against the Chapter 7 corporate debtor and its principal. The Bankruptcy Appellate Panel reversed as to the corporate principal, holding, *inter alia,* that even if bankruptcy courts have inherent power under *Chambers* to impose sanctions for bad faith litigation conduct, that power would not apply or extend to a non-party, non-attorney. *Rainbow,* 136 B.R. at 553.

The court in *Rainbow* concluded that *Chambers* should be limited to parties and their attorneys. *Id.* The court noted that *Chambers* did not involve "the use of this inherent power as a basis to sanction an entity who is neither a party nor an attorney." *Id.* The court further noted that its own research failed to uncover any case that had extended *Chambers* to non-parties. *Id.; see also Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.,* 2 F.3d 1397, 1411 n. 39 (5th Cir.1993) (indicating that the Fifth Circuit had also "found no cases sanctioning non-parties for abusing the discovery process"); *cert. denied,* —— U.S. ——, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994).[5]

The court in *Rainbow* drew further support for its conclusion by examining the nature of the so-called "bad faith exception" to the American Rule against fee shifting. 136

---

5. *But see In re Courtesy Inns, Ltd., Inc.,* 40 F.3d 1084 (10th Cir.1994) (holding that the bankruptcy court could impose sanctions on Chapter 11 corporate principal under its inherent authority as reposed in § 105(a), which is "intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*"). This court does not necessarily disagree with the court in *Courtesy Inns* regarding the use of § 105. Whether a bankruptcy court need rely on § 105 or not for its inherent authority to impose sanctions is not the real issue. It matters not so much where the authority comes from, but, rather, that it exists in the first place. The Supreme Court indicated that the authority is inherent in the formation and existence of the federal courts. *Chambers,* 501 U.S. at 43, 111 S.Ct. at 2132. *It would therefore seem that resort to statutory sources would appear unnecessary. See also* discussion *infra* regarding *Corder v. Howard Johnson & Co.,* 37 F.3d 550 (9th Cir.1994); *Pennwalt Corp. v. Durand–Wayland, Inc.,* 708 F.2d 492 (9th Cir.1983); and *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 121 F.R.D. 264 (M.D.N.C. 1988). However, as demonstrated through the court's analysis, these cases are distinguishable from the matter before this court and they do not stand for the broad proposition that a court may sanction any non-party that interferes with or abuses the legal system.

B.R. at 553. The bad faith exception "developed as a means of imposing fees and costs upon a party or an attorney [for a party] on the basis of abusive conduct ... and did not purport to address the liability of non-parties for fees or costs." *Id.* (citation omitted). Again, the court's own research "uncovered no cases imposing sanctions against a non-party under this exception to the American Rule." *Id.* Finally, the court in *Rainbow* declined to extend *Chambers* to non-parties due to a lack of authority to do so as well as the Supreme Court's directive that the inherent power must be exercised with restraint and discretion. *Id.* This court agrees with and adopts the reasoning and result of the court in *Rainbow* insofar as it pertains to the inherent power to sanction non-parties.

Further, under the test enunciated in *Helmac Products Corp. v. Roth (Plastics) Corp.*, this court lacks the inherent authority to impose sanctions on a non-party expert witness who has not appeared before the court. That test is as follows:

> To be subject to the Court's inherent power to sanction, *a non-party not subject to court order must* (1) have a substantial interest in the outcome of the litigation *and* (2) substantially participate in the proceedings in which he interfered.

*Helmac Products*, 150 F.R.D. 563, 568 (E.D.Mich.1993) (emphasis supplied). The court in *Helmac Products* expressly limited this test

> to those individuals who were either (1) parties, (2) subject to a court order, or (3) real parties in interest. The test *excludes an individual who has only a minor degree of involvement with the [underlying] litigation and who acts outside the presence of the court.* While such a person may interfere with litigation, the [court's] interest in safeguarding the integrity of its proceedings must give way to a limitation on the [court's] authority commensurate with its traditional powers.

*Id.* (emphasis supplied).

Applied to the matter before the court, this court finds that, under the two-part test

enunciated by the court in *Helmac Products*, this court lacks the inherent authority to impose sanctions upon Gowan as a non-party expert witness who has not appeared before the court nor violated an order of the court. Gowan lacks the requisite substantial interest in the outcome of the underlying litigation. While Gowan may be intellectually interested in the outcome of the underlying litigation, Gowan never had a financial interest in the outcome.[6] Therefore, under the first prong of the *Helmac Products* test, Gowan lacks the requisite substantial interest in the outcome of the litigation.

Because the *Helmac Products* test is a two-part test and the first part has not been met, the court could stop here. However, for the sake of complete discussion, the court will explore the second prong of the test. The court concludes that, while it is a close question, Gowan has not substantially participated in the overall proceedings in the manner contemplated by this test. Gowan may have helped to develop theories which the Guarantors relied on in the litigation, and he may well have suggested the shots, but the attorneys called them. His participation was not as a party. Gowan may have been more than the usual expert, but not enough to equate him with a party. In any event, Gowan is not (1) a party, (2) subject to a court order that he violated, or (3) a real party in interest. Thus, under the test enunciated in *Helmac Products*, this court does not have the inherent power to sanction Gowan.

Notwithstanding the foregoing analysis, there appears to be some authority for imposing sanctions on non-parties under a court's inherent authority. *See Corder v. Howard Johnson & Co.*, 37 F.3d 550 (9th Cir.1994); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 708 F.2d 492 (9th Cir.1983); and *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264 (M.D.N.C.1988). However, these cases are distinguishable from the matter before this court.

---

**6.** The Northern has not alleged that Gowan's compensation is dependent upon the outcome or is otherwise contingent.

The court in *Corder* indicated that "a court may impose attorney's fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices." *Corder*, 37 F.3d at 557 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)). This court, relying on *Chambers*, has already noted that a court's inherent power to impose sanctions extends to parties and their counsel. *Roadway Express*, in and of itself, does not support a further extension to non-parties who are not attorneys, as *Roadway Express* involved sanctions imposed upon counsel for a party for violating a discovery order and the Court did not discuss any other type of non-party. Rather, the Court's discussion of inherent authority is framed in terms of a federal court's power over members of its bar, which the court found to be at least as great as that over parties. *Roadway Express*, 447 U.S. at 766, 100 S.Ct. at 2464. As set forth above, Gowan is not a party nor counsel for a party and has not violated a discovery order.

The court in *Corder* also indicated that "a court may impose attorney's fees to sanction a non-party whose actions or omissions cause the parties to incur additional expenses." *Corder*, 37 F.3d at 557 (citations omitted). The court then cited two cases which, when examined, provide little support for extending *Chambers*. First, the court cited *In re Holloway*, 884 F.2d 476 (9th Cir.1989) (*per curiam*), which involved sanctions of a court reporter. Although a court reporter is not a party, a court reporter is nonetheless a cog in the court's administrative machinery, in contrast to a party's expert witness.

The second case cited is *Moten v. Bricklayers, Masons and Plasterers International Union of America*, 543 F.2d 224 (D.C.Cir. 1976) (*per curiam*). In *Moten*, a non-party was assessed attorney's fees and costs arising out of that non-party's failed attempt to become a party by intervention. The motion for those fees and costs, in contrast to the Northern's motion, was based on an express statutory provision contained in Title VII of the Civil Rights Act of 1964 which authorized the imposition of such fees and costs. Therefore, the decision in *Moten* does not provide

any support for extending the holding in *Chambers* to non-parties.

The decision in *Corder* is further distinguishable from the matter before this court because the attorney's fees awarded in *Corder* were based on a specific statutory provision contained in ERISA. *Corder*, 37 F.3d at 554. Furthermore, the district court did not rely on its inherent power and the Ninth Circuit merely raised the issue briefly before deciding that sanctions should not be imposed against the non-party under the inherent authority. *Id.* at 557.

In *Pennwalt*, the court, without expressly deciding the issue, implicitly accepted that attorney's fees could be assessed against a non-party. *Pennwalt*, 708 F.2d 492, 494–95. *See also Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 n. 39 (5th Cir.1993) (distinguishing cases), *cert. denied*, —— U.S. ——, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994). Nevertheless, the court reversed the lower court due to the lack of a finding of bad faith. *Id.* However, the case is factually distinguishable from the matter before the court as the district court in *Pennwalt* had imposed the sanctions based on a failure to comply with a subpoena duces tecum. *Pennwalt* provides no support for this court to impose sanctions on a non-party expert witness in the absence of a violation of a discovery order.

Finally, in *Parkway Gallery*, although the court indicated that a court "has inherent power to impose sanctions on parties, *non-parties* or attorneys *who violate discovery orders*," that case concerned a violation of a discovery order by a party and therefore provides no support for the Northern's position. *Parkway Gallery*, 121 F.R.D. at 267 (emphasis supplied).

Most, if not all, of the cases cited by the Northern are distinguishable on their facts from the matter before the court. In *Lockary v. Kayfetz*, 974 F.2d 1166 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2397, 124 L.Ed.2d 298 (1993), owners of undeveloped land sued a public utility district regarding a water hookup moratorium. The Ninth Circuit affirmed the district court's imposition of sanctions under its inherent authority on what was ostensibly a non-party

corporation. *Id.* at 1168. However, the sanctioned non-party corporation ("PLF"), while not a named party, nonetheless acted so much like a party that the Ninth Circuit treated it like a party.

The *Lockary* case does not stand for the proposition that a court has the inherent power to impose sanctions on a non-party. Rather, *Lockary* must be limited to its facts, as the facts and circumstances present in that case were unique. While the Northern has alleged that Gowan controlled the litigation and was actively involved, it has not alleged that Gowan contacted the Guarantors, that Gowan paid for the litigation, that Gowan held himself out as the Guarantors' attorneys' employer and as the one calling the shots, that each court paper listed Gowan's name and address, that the Guarantors' interests ran a distant second to Gowan's interests, or that Gowan used the litigation as a forum merely to set a legal precedent beneficial to himself. In short, the Northern's allegations do not set forth facts similar to those upon which the court in *Lockary* relied in holding PLF could be sanctioned under the district court's inherent authority.

The court now turns to the remaining cases cited by the Northern. The Northern has cited several cases to support its position that courts have the inherent authority to sanction non-parties, but these cases are inapposite. *See In re Eliscu,* 139 B.R. 883, 886 (N.D.Ill.1992) (affirming bankruptcy court's imposition of sanctions on debtor, who was clearly a *party* ); *In re D.H. Overmyer Telecasting Co., Inc.,* 53 B.R. 963, 985 (N.D.Ohio 1984) (affirming bankruptcy court's order against parties who were not originally parties, based on old Fed.R.Bankr.P. 771, but nowhere discussing sanctions against parties or non-parties), *aff'd in unpublished decision,* 787 F.2d 589 (6th Cir.1986); *In re Aurora Investments, Inc.,* 144 B.R. 899, 902–03 (Bankr.M.D.Fla.1992) (although indicating that a bankruptcy court has the inherent power to sanction parties and their counsel for bad faith conduct, the court instead imposed sanctions under FED.R.BANKR.P. 9011); and *In re Kinney,* 51 B.R. 840, 846–48 (Bankr.C.D.Cal.1985) (although noting inher-

ent power, court actually sanctioned *attorney* under Rule 9011 and 28 U.S.C. § 1927).

The Northern has also maintained that this court has the power to sanction a non-party outside of the court's jurisdiction if that non-party knowingly, or with notice, aids and abets a party in violation of a court order. *See Waffenschmidt v. MacKay,* 763 F.2d 711 (5th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986); *Select Creations, Inc. v. Paliafito America, Inc.,* 852 F.Supp. 740 (E.D.Wis.1994). Neither the proposition itself nor the cases cited in support thereof are relevant or applicable to the matter before this court, as no court order has been violated and no allegations of aider or abettor liability have been made. Moreover, in *Waffenschmidt,* the court relied on a court's inherent power regarding the enforcement of injunctions against non-parties with notice of the injunction who aid and abet violations thereof. 763 F.2d at 716, 719. No injunction has been issued by this court. In *Select Creations,* the court relied on FED. R.CIV.P. 71 to enforce its orders against bogus and fraudulently created non-parties. 852 F.Supp. at 777. That Rule is not at issue in this matter.

Similarly, *Quinter v. Volkswagen of America,* 676 F.2d 969 (3d Cir.1982), is distinguishable as well. In *Quinter,* the court found that a non-party expert witness could be found in contempt for violation of a protective order regarding disclosure of trade secrets where he has notice of the order and either abets the party or is legally identified with the party. 676 F.2d at 972. Again, for purposes of the Northern's motion for sanctions, no direct, or, for that matter, indirect, violation of an order has been alleged. Moreover, this is a motion for sanctions, not a contempt proceeding.

Finally, the court finds the opinion in *Raymark Industries, Inc. v. Stemple,* 714 F.Supp. 460 (D.Kan.1988) to be inapplicable to the matter before the court. In *Raymark,* an asbestos manufacturer sued attorneys and physicians who had allegedly made false claims based upon which the manufacturer had entered into a settlement. 714 F.Supp. 460, 462. On her motion to dismiss for failure to state a claim, one of the doctors

argued that she had absolute immunity from liability under the witness immunity doctrine. *Id.* at 476. The court disagreed and found that "the doctrine of witness immunity does not apply because, according to the allegations in the complaint, defendant ... was a co-conspirator in the scheme to defraud Raymark." *Id.* at 477. Thus, even though the doctor was an expert witness regarding the class action suit that led to the settlement, she was not being sued in her capacity as a witness, but, rather, as a co-conspirator for the false and fraudulent *acts* in diagnosing the workers. *Id.*

While the Northern has argued that witness immunity does not apply, that argument is irrelevant, as Gowan has not invoked the doctrine of witness immunity. Even if Gowan had done so, the court in *Raymark* was dealing with a factual and procedural context wholly distinguishable from the matter before this court. First, *Raymark* involved a lawsuit for fraud, not a motion for sanctions. Second, although the doctor-expert witness was involved in the litigation that led to the settlement, she was now being sued as an alleged co-conspirator, not in her role as a witness. In contrast, in this matter sanctions are being sought against Gowan based on his role as an expert witness.

The holding in *Chambers v. NASCO, Inc.*, should not be extended to non-party expert witnesses who have not appeared in court,

testified in any proceeding, nor violated a court order.[7]

### B. Gowan's Motion to Dismiss

Gowan has moved for dismissal of the Northern's motion for sanctions against him. Gowan's motion should be treated as a motion to deny the Northern's motion for sanctions as a matter of law.[8] Based on this court's conclusion that, as a matter of law, it does not, under the facts pleaded, have the inherent authority to impose sanctions on Gowan, his motion should be granted.

### C. Gowan's Counter–Motion for Sanctions

■■■ For the reasons stated below, the court denies Gowan's motion for sanctions against the Northern and its attorneys. The court has determined that Gowan's motion should be treated as one for sanctions under FED.R.BANKR.P. 9011 and this court's inherent power to impose sanctions for bad faith conduct in litigation and the commission of fraud upon the court.[9] As the court finds that Gowan has not alleged conduct on the part of the Northern or its counsel worthy of sanctions, the court will deny Gowan's motion.

■■■ Initially, the court notes that FED.R.BANKR.P. 9011 ("Rule 9011")[10] is similar to former FED.R.CIV.P. 11 ("former

7. The court stresses that it is not ruling on the merits as to whether Gowan's conduct was indeed worthy of sanction. Rather, the court has ruled that as a matter of law it is unable to impose sanctions under its inherent authority against Gowan as a non-party expert witness who has not appeared before this court nor violated a court order. In actuality, if Gowan's conduct was as alleged, it is worthy of sanctions. The court's denial of the Northern's motion should not be construed to indicate in any way approval of Gowan's conduct.

8. *See* footnote 1 and accompanying text.

9. *See* footnote 1 and accompanying text.

10. FED.R.BANKR.P. 9011 provides in relevant part:
    The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the

attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case.

\* \* \* \* \* \*

If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.
FED.R.BANKR.P. 9011.

Rule 11") [11]. *In the Matter of Excello Press, Inc.*, 967 F.2d 1109, 1111 (7th Cir.1992); *In re Leigh*, 165 B.R. 203, 231 (Bankr.N.D.Ill. 1993). As such, cases interpreting former Rule 11 are useful in analyzing Rule 9011.[12] *In re Rainbow Magazine, Inc.*, 136 B.R. 545, 550 (9th Cir. BAP 1992) (citation omitted).[13] The primary "purpose of [former] Rule 11 is to deter baseless filings in [the trial] court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Although former Rule 11 should not be applied so as to " 'chill an attorney's enthusiasm or creativity in pursuing factual or legal theories,' " *In re Villa Madrid*, 110 B.R. 919, 922 (9th Cir. BAP 1990) (citations omitted); *see also* Adv. Comm. Note to 1983 amendments to Rule 11, "any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454.

■■■ Former Rule 11 contains two grounds for the imposition of sanctions: (1) the "frivolousness clause," which looks to whether a party or an attorney for a party has made a reasonable inquiry into both the facts and the law; and (2) the "improper purpose clause," which looks to whether a document was interposed for an improper purpose, such as delay, harassment, or increasing the cost of litigation. *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1435–36 (7th Cir.1987), *abrogated on other grounds, Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 930 (7th Cir.1989) (*en banc*). *See also Rainbow*, 136 B.R. at 550 (citations omitted). Both bases of former Rule 11 sanctions are evaluated under a standard of objective reasonableness considered under all the circumstances. *Pacific Dunlop Hold-*

*ings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir.1994).[14] The objective reasonableness of a signer's conduct is to be evaluated as of the time the document was filed. *LaSalle National Bank of Chicago v. County of DuPage*, 10 F.3d 1333, 1338 (7th Cir.1993). *See also* Adv.Comm. Note to 1983 amendments to Rule 11. The determination as to whether a particular inquiry was reasonable necessarily "depends on the circumstances of the particular case." *Excello Press*, 967 F.2d at 1112–13 (citation omitted). *See also* Adv.Comm. Note to 1983 amendments to Rule 11.

■■■ Once the court finds that former Rule 11 has been violated, sanctions are mandatory. *Mars Steel Corp.*, 880 F.2d at 935; *Tekfen Constr. and Installation*, 847 F.2d at 443. The amount or type of sanction to be imposed is within the trial court's discretion. *Burda v. M. Ecker Co.*, 2 F.3d 769, 776 (7th Cir.1993). The sanction may include "a reasonable attorney's fee." FED.R.BANKR.P. 9011; *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1370 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992).

Gowan has alleged that the Northern violated Rule 9011 by filing the motion for sanctions against him. Gowan maintains that this filing was frivolous, which the court takes as a reference to the "frivolousness clause," and, therefore, to the reasonable inquiry prong of Rule 9011. The court finds that the Northern's motion did not violate Rule 9011 because the attorneys conducted a reasonable inquiry. The motion is both well grounded in fact and warranted by a good faith argument for the extension of existing law.

■■■ In evaluating a filed document under former Rule 11, "a court must take care not to penalize arguments for legal evolution." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir.1987), *cert. dis-*

---

**11.** As Rule 9011 more closely tracks the language of former Rule 11 as it existed prior to the 1993 amendments than the present version of Rule 11, the court will refer to the pre–1993 amendments version of Rule 11.

**12.** For the purposes of this discussion, the court will alternately refer to "Rule 9011" and "former Rule 11."

**13.** *Accord In re Chisum*, 847 F.2d 597, 599 (9th Cir.), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988); *In re Leigh*, 165 B.R. 203, 231 (Bankr.N.D.Ill.1993).

**14.** *See also Cooter & Gell*, 496 U.S. at 401, 110 S.Ct. at 2458; *Federal Deposit Ins. Corp. v. Tekfen Constr. and Installation Co., Inc.*, 847 F.2d 440, 442 (7th Cir.1988); and *Rainbow*, 136 B.R. at 550 (citation omitted).

*missed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). Moreover, "the only way to find out whether a [filed document] is an effort to change the law is to examine with care the arguments counsel later adduce." *Id.* The court has carefully considered the Northern's motion for sanctions and the legal arguments set forth therein. The Northern argued that *Chambers* should be extended to non-party expert witnesses. The law in *Chambers* is the existing law; the Northern made a good faith argument for its extension, as the discreet legal issue posed by the Northern's argument was a close question.[15] Therefore, the Northern's motion for sanctions was not frivolously filed and does not violate Rule 9011.

Although Gowan did not specifically argue that the Northern's motion for sanctions was filed for an improper purpose, the court nevertheless finds that it was not filed for an improper purpose; thus, the Northern's motion does not violate Rule 9011 under the "improper purpose clause." The Northern had a legitimate argument that Gowan should be sanctioned, and the purpose of its motion was to that very end. As there appear to have been legitimate factual grounds for imposing sanctions on Gowan, the motion was not interposed to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation or administration of the case. Rather, the motion was interposed to recover attorney's fees allegedly incurred as a result of Gowan's bad faith litigation conduct. Therefore this court cannot say that the Northern's motion was interposed for an improper purpose, and the court will not impose sanctions under Rule 9011.

Gowan also relied on this court's inherent authority to sanction parties and their counsel for bad faith litigation conduct or the commission of fraud upon the court. The court's exercise of its inherent authority to impose sanctions is discretionary and must be exercised with restraint. *Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132. This court rejects Gowan's allegations and declines to exercise its inherent authority. Rather, Gowan's assertions themselves border on being vexatious and frivolous.[16] The court finds the absence of both bad faith litigation conduct and fraud upon the court on the part of the Northern and its counsel. Therefore, Gowan's counter-motion for sanctions must be denied.

## VI. CONCLUSION

For the reasons set forth above, the court will by separate order (i) deny the Northern's motion for sanctions; (ii) grant Gowan's motion to dismiss; and (iii) deny Gowan's counter-motion for sanctions.

**15.** Factually, if ever allegations warranted extending *Chambers,* these would be the ones. The record is replete with conduct on the part of Gowan that would appear to be sanctionable.

**16.** Gowan has made wild accusations against the Northern and its counsel. Several of these accusations appear on their face to lack basis or foundation in fact. *See* Order of November 8, 1993 at para. 37 (approving the renegotiated settlement between the Trustee and the Northern; finding "no merit or value" to the Guarantors' alleged claims, defenses, and setoffs, which were essentially adopted from Gowan's theories; and finding that nothing contained in Gowan's reports "would serve as the basis for a claim, defense or setoff against the Northern that is cognizable under applicable law"). This Order and the findings made therein were final under 28 U.S.C. §§ 157 and 158 and the appeal was dismissed. *See In re VIII South Michigan Associates,* 167 B.R. 877 (N.D.Ill.1994). Gowan has also filed a barrage of unnecessary, excessive, and repetitive pleadings in the form of responses, replies, supplements, and letters to the court. Bearing in mind that Gowan is acting *pro se,* the court nevertheless does not approve of this practice and strongly discourages it.