**HELMAC PRODUCTS CORPORATION, a Michigan corporation, Plaintiff,**

v.

**ROTH (PLASTICS) CORPORATION, a Canadian corporation, Defendant.**

Civ. A. No. 84–CV–8225–FL.

United States District Court,
E.D. Michigan, S.D.,
at Flint.

June 15, 1993.

David A. Ettinger and Stanford P. Berenbaum, Detroit, MI, for plaintiff.

Roger K. Timm, Kathleen D. Hunt; and Jeffrey G. Heuer, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Pending before the Court are cross motions for summary judgment as to Count V of the supplemental complaint. This count seeks the Court to use its inherent power to sanction Eric Roth for ordering the destruction of documents that were subject to discovery in litigation between Helmac, Inc. ("Helmac") and Roth (plastics) Corp. ("Roth (plastics)"), a Canadian company, under the Anti–Dumping Act of 1916, 15 U.S.C. § 71 et seq. ("the Act").

This Court previously conducted an evidentiary hearing that lasted several weeks regarding the document destruction and issued an order, reported at 814 F.Supp. 560, 568–571 (E.D.Mich.1992), that found Roth (plastics) was subject to a default judgment for these activities, and that Eric Roth had directed them. Later, in an unpublished opinion, the Court granted Helmac a default judgment as to liability under the Anti–Dumping Act of 1916. The Court has since issued orders clarifying the legal issues governing the forthcoming trial on damages. 814 F.Supp. 581 (E.D.Mich.1993).

Helmac filed a supplemental complaint alleging violations of Michigan's Fraudulent Conveyance Act (Counts I–IV). The Court dismissed those counts for lack of personal jurisdiction in a written order issued in April 1993. The Court now considers cross motions for summary judgment as to Count V, which states in pertinent part:

### COUNT V

### INHERENT POWER OF THE COURT TO MANAGE LITIGATION

39. * * *

40. Eric Roth's actions in intentionally conceiving, carrying out and effecting a scheme to withhold and destroy documents responsive to Helmac's discovery requests have frustrated and hindered this Court's management of this case.

41. Eric Roth's actions have proximately caused injury to Helmac, limiting the information available to Helmac to assist it in its Anti–Dumping Act claim.

42. Therefore, this Court should use its inherent power to properly manage litigation, and impose sanctions and award Helmac damages against Eric Roth for the willful withholding and destruction of documents.

WHEREFORE, Helmac prays this Court to:

A. Use its inherent powers to award Helmac damages against Eric Roth in the full amount of any judgment awarded on its Anti–Dumping Act claim; that being at least $1.5 million, trebled; and

B. Order such other relief as it finds just.

Supplemental and Amended Complaint.

**I. DOES *CHAMBERS v. NASCO* PROVIDE AUTHORITY FOR THE COURT TO USE ITS INHERENT POWER TO SANCTION AN INDIVIDUAL WHO, WHILE NOT A PARTY NOR SUBJECT TO COURT ORDER, DESTROYED DOCUMENTS IN A LAWSUIT IN WHICH HE HAD A SUBSTANTIAL INTEREST IN THE OUTCOME AND IN WHICH HE HAD SUBSTANTIALLY PARTICIPATED?**

This Court must first consider whether Count V in the case at bar requires it to exceed the boundaries of its authority to impose sanctions on Mr. Roth. Both parties discuss the applicability of *Chambers v. NASCO,* —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) to the case at bar, although primarily in the context of notice and fairness rather than in terms of limits to the exercise of judicial power.

In *Chambers,* G. Russell Chambers ("Chambers") owned a television station which he agreed to sell to NASCO. Chambers informed NASCO that he intended not

to follow the agreement. Counsel for NAS-CO, INC. informed counsel for Chambers on Friday October 14, 1983 that NASCO would file suit the following Monday in the United States District Court for the Western District of Louisiana, to seek specific performance of the agreement, as well as a temporary restraining order (TRO) to prevent the alienation or encumbrance of the properties at issue. NASCO provided this notice in accordance with Fed.R.Civ.P. 65 and Local Rule 11.1, both designed to give a defendant in a TRO application notice of the hearing and an opportunity to be heard. *Id.*, at ——, 111 S.Ct. at 2128, 115 L.Ed.2d at 39.

Chambers and his attorney acted to place the properties at issue in the TRO beyond the reach of the District Court through creation of a trust. *Id.*, at ——, 111 S.Ct. at 2128, 115 L.Ed.2d at 40. Throughout the litigation that followed during the next two and one-half years, Chambers behaved in a manner "deemed to have been sanctionable conduct." *Id.*, at ——, 111 S.Ct. at 2130, 115 L.Ed.2d at 42.

The district court imposed attorney's fees and expenses against Chambers and one of his attorneys totalling approximately $996,-650, relying upon its inherent powers rather than upon any statute or rule for authority. *Id.* In so doing, the court specifically found some behavior by Chambers fell outside the scope of Rule 11.1 or 28 U.S.C. § 1927 but worthy of sanction nonetheless.[1] The Court ruled that Chambers' entire behavior in the litigation from October 14, 1983 thereafter was sanctionable. The Supreme Court, in a 5–4 decision per White, J., upheld the district court's imposition of sanctions for Chambers' conduct, including his activities during the weekend *prior to the filing of the suit.* The Court first held that district courts are vested with inherent powers. *Id.*, at ——, 111 S.Ct. at 2132, 115 L.Ed.2d at 44. Next, the Court held that neither the sanctioning scheme in § 1927 nor the rules displace "the inherent power to impose sanctions for the bad-faith conduct described above." *Id.*, at

——, 111 S.Ct. at 2134, 115 L.Ed.2d at 46. The Court then held that federal courts can use their inherent power to assess attorney's fees as a sanction in diversity cases. *Id.*, at ——, 111 S.Ct. at 2136, 115 L.Ed.2d at 49–50. The Court noted, however, that "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.*, at ——, 111 S.Ct. at 2132, 115 L.Ed.2d at 45.

The most significant aspect of *Chambers* for the case at bar is that the Court upheld the district court's sanctioning of Chambers for activities that he committed *before* he became a party or was subject to any court order. The Court expressly rejected Chambers' argument that the district court lacked the authority to sanction him for conduct before other tribunals, including the FCC, the Court of Appeals and the Supreme Court, "As long as a party receives an appropriate hearing, as did Chambers, ... the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." —— U.S. at ——, 111 S.Ct. at 2139, 115 L.Ed.2d at 53 (citations omitted).

In the case at bar, Mr. Eric Roth was not a party at the time that he committed the acts in question. Rather, he was the owner of the corporate party and the director of the activities that led this Court to grant Helmac a default judgment as to liability. He was playing an active role in the litigation. The Court must decide whether *Chambers* covers the activities of a person in his position.

To some degree, *Chambers* holds that a district court has the power to sanction a non-party under the Court's inherent powers. That is, the Court upheld the sanctioning of Chambers for his activities for the weekend prior to the filing of suit. Shortly thereafter, however, Chambers became a party. One way to explain the Court's decision narrowly is to recognize that once Chambers received notice pursuant to Rule 65, Chambers was about to become a party, and that it made no logical sense to distinguish Chambers' con-

---

1. 28 U.S.C. § 1927 provides:

"Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

duct over the weekend from his conduct after suit was filed.

While Eric Roth was not about to become a party at the time that he directed the destruction of documents, he was closely tied to the litigation. As the owner of the corporate defendant, he had a substantial interest in the outcome of the litigation. Moreover, as the chief executive officer in the company, he played an active role in the conduct of this litigation, in which he faced his former partner and chief competitor as his adversary.

On the other hand, the Court's willingness to sanction non-parties crosses a significant line. Prior to *Chambers*, it was not clear that a federal district court had the authority to sanction a non-party for activity that was not conducted in violation of a court order directed at that non-party. In fact, it appeared contrary to law. *See e.g., Young v. United States*, 481 U.S. 787, 800 n. 10, 107 S.Ct. 2124, 2134 n. 10, 95 L.Ed.2d 740 (1987) ("A court's authority is inherently limited, however by the nature of the judicial power, for the court has jurisdiction in a contempt proceeding only over those particular persons whose legal obligations result from their earlier participation in proceedings before the court."). The Court could easily have adopted a bright-line rule that Chambers' conduct was only sanctionable after he became a party: the Court chose not to do so.

Clearly, in the absence of the bright-line party—non-party distinction, federal courts must adopt a new boundary to limit the imposition of sanctions. In determining where such a boundary may lie, the Court bears in mind the admonition quoted *supra*, about the dangers of inherent powers. Moreover, this Court also considers the arguments of the two dissenting opinions in *Chambers*. Justice Scalia wrote that he disagreed with "the Court's statement that a court's inherent power reaches conduct 'beyond the court's confines' that does not ' " 'interfer[e] with the conduct of trial,' " ' *ante*, [—— U.S.] at ——, [111 S.Ct. at 2132], 115 L.Ed.2d at 44 (quoting *Young v. United*

*States,* 481 U.S. 787, 798 [107 S.Ct. 2124, 2132, 95 L.Ed.2d 740] (1987))." *Chambers,* —— U.S. at ——, 111 S.Ct. at 2141, 115 L.Ed.2d at 55 (Scalia, J., dissenting).

In the case at bar, Justice Scalia's concern does not apply because Roth's actions directly interfered with the conduct of trial. In fact, this Court previously ruled that a trial as to liability was not possible given the destruction of documents.

■ Justice Kennedy, writing for all four dissenting justices, dissented because he thought that sanctions relying upon inherent powers should only be employed after first exhausting express sanctioning provisions. This argument could conceivably apply to the case at bar in that Eric Roth's actions might be subject to sanction under the Federal Rules of Civil Procedure governing discovery.[2]

Secondly, Justice Kennedy dissented because the district court sanctioned pre-litigation conduct that appeared to include the breach of contract in bad faith as well as the litigation tactics, "A Court's inherent authority extends only to remedy abuses of the judicial process." *Id.,* at ——, 111 S.Ct. at 2143, 115 L.Ed.2d at 64 (Kennedy, J., dissenting).

In the case at bar, neither Eric Roth's nor his companies' activities that led to liability in the anti-dumping action has any bearing on the evaluation of Eric Roth's destruction of documents. Therefore, this issue remains inapplicable to the case at bar.

The case at hand does raise an issue discussed in *Young v. United States,* 481 U.S. 787, 800 n. 10, 107 S.Ct. 2124, 2134 n. 10, 95 L.Ed.2d 740. In that case, the Court reversed an appellate court's affirmance of a district court's appointment of an interested party's counsel as a special prosecutor in a case for criminal contempt for violation of an injunctive order. The Court held, relying upon its supervisory power, 481 U.S. at 809 n. 21, 107 S.Ct. at 2139 n. 21, that while a district court may use its inherent power to

---

**2.** Counsel should address at the hearing, *see infra,* whether Eric Roth's sanctionable behavior is covered by Fed.R.Civ.P. 26(g), 37, or any other provision of the Federal Rules. The Court con-

curs with the *Chambers* dissent that it is preferable to rely upon statutory authority if available, than to rely completely upon inherent powers.

initiate a prosecution for contempt by appointing a special prosecutor, it may not appoint an attorney who owes an ethical duty to a person who would benefit from a finding of contempt. *Id.,* at 814, 107 S.Ct. at 2141.

The Court rejected the argument, made by Justice Scalia in his concurrence, that federal courts lack the inherent power to appoint special prosecutors to prosecute contemnors for disobedience of court judgments. 481 U.S. at 800 n. 10, 825, 107 S.Ct. at 2134 n. 10, 2147 (Scalia, J., concurring). In his concurrence, Justice Scalia raised the spectre of Congress finding an inherent power to prosecute and punish those who violate its laws: the clear usurpation of an executive branch function. *Id.,* at 821, 107 S.Ct. at 2145.

The majority made two arguments in response: (1) that the doctrine of inherent powers is a necessity to protect the functioning of its own processes, *Anderson v. Dunn,* 19 U.S. 204 (6 Wheat 204) 227, 5 L.Ed. 242 (1821), and (2) Justice Scalia's hypothetical about Congress was distinguishable because the court's power of contempt was inherently limited:

A court's authority is inherently limited, however, by the nature of the judicial power, for the court has jurisdiction in a contempt proceeding only over those particular persons whose legal obligations result from their earlier participation in proceedings before the court. By contrast, the congressional prosecutorial power the concurrence hypothesizes would admit of no such limit; the parties potentially subject to such power would include the entire population. Acknowledging the limited authority of courts to appoint contempt prosecutors thus provides no principle that can be wielded to eradicate fundamental separation-of-powers boundaries.

*Young,* 481 U.S. 787 at 800 n. 10, 107 S.Ct. 2124 at 2134 n. 10.

By extending the inherent power to nonparties in *Chambers,* the Court appeared to eliminate the jurisdictional barrier that the court relied upon in *Young.* Significantly, Justice Scalia admitted the validity of *Anderson*'s necessity doctrine:

I recognize, however, that the narrow principle of necessity underlying *Anderson*—

that the Legislative, Executive, and Judicial Branches must each possess those powers necessary to protect the functioning of its own processes.... does have logical application to the federal courts' contempt powers. But that principle would at most require that courts be empowered to prosecute for contempt those who interfere with the orderly conduct of their business or disobey orders necessary to the conduct of that business (such as subpoenas). It would not require that they be able to prosecute and punish, not merely disruption of their functioning, but disregard of the *product* of their functioning, their judgments.

*Young,* 481 U.S. at 821, 107 S.Ct. at 2145 (Scalia, J., concurring).

The case at bar concerns one "who interfere[d] with the orderly conduct of [the court's] business," *id.,* by destroying documents necessary for trial. Yet the Court's power to sanction cannot possibly extend to everyone who interferes with litigation before the court. Otherwise, the power to sanction would be so wide that it would be unenforceable. A hypothetical illustrates this point.

Suppose Eric Roth had a cousin that lived in England who had not participated in the litigation who flew to Ontario for a weekend and destroyed company documents without Eric Roth's knowledge out of a misguided effort to assist his cousin. Would the Court have power to sanction the cousin in England? If so, this result would demean the power of the federal courts. It is patently unenforceable and contradicts traditional notions of jurisdiction. The plaintiff would presumably have other remedies against such a person, who might be vulnerable to a suit in tort or a criminal prosecution in an Ontario court.

This hypothetical case is distinguishable from the case at bar because of the insufficient connection between the cousin and the litigation. Eric Roth should be subject to sanction because he both had a substantial interest in the litigation and had previously participated in the litigation in a substantial way.

*Anderson v. Dunn,* 19 U.S. (6 Wheat) 204 (1821) lends some support for this result. In that case, the Court found that the House of Representatives had the inherent power to hold a noisy intruder in contempt for disrupting proceedings, and issue a warrant for his arrest that would detain him until the adjournment of the House. *Id.,* at 230–31. The Court reasoned that the basis for this power was "the principle of self-preservation." *Id.,* at 230. The Court analogized the House's action to "Courts of justice [which] are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and, as a corollary to this proposition, to preserve themselves and their officers from the approach and insults of pollution." *Id.* at 227.

The Court also discussed the limits of inherent powers: "Analogy, and the nature of the case, furnish the answer—, the least possible power adequate to the end proposed; which is the power of imprisonment." *Id.,* at 231. This limit, the least possible power for the end proposed, provides the ultimate test for a federal court's inherent power.

A federal district court is as much disrupted in its effort to obtain justice by the destruction of subpoenaed documents in Ontario as it is by a disruption in the courtroom. When that destruction is caused by the principal shareholder and chief executive officer of a corporate party, the result is virtually tantamount to the destruction of evidence by the party itself. That the Court has the power to sanction the party is clear. But the Court should also have the power to sanction the corporate officer.

The reasons for doing so are plain: the individual is as much involved in the litigation as any party would be, and his participation in these events is tantamount to a direct snubbing of the Court's authority by that individual. In some circumstances, a corporate entity may have depleted assets, and an individual may avoid the penalty for his actions by hiding behind the corporate veil. This avoidance is not warranted. Logically, it seems incongruous for the Court not to be able to impose a penalty upon the individual.

■ The Court thinks that a rigorous application of a two-part test will provide "the least possible power adequate to the end proposed." *Anderson,* 19 U.S. at 231. To be subject to the Court's inherent power to sanction, a non-party not subject to court order must (1) have a substantial interest in the outcome of the litigation and (2) substantially participate in the proceedings in which he interfered. This test will effectively limit the scope of the Court's inherent power to sanction to those individuals who were either (1) parties, (2) subject to a court order, or (3) real parties in interest.

The test excludes an individual who has only a minor degree of involvement with the litigation and who acts outside the presence of the court. While such a person may interfere with litigation, the Court's interest in safeguarding the integrity of its proceedings must give way to a limitation on the Court's authority commensurate with its traditional powers.

This test does not go beyond the holding in *Chambers.* Rather, it sets limits that are consistent with the result in *Chambers.*

Therefore, the Court concludes that it has the inherent power to sanction Eric Roth for his ordering the destruction of documents.

## II. OTHER LEGAL ARGUMENTS

Defendant argues as follows: (1) he was neither a party nor subject to compulsory process at the time of the document destruction; therefore, he had no notice that he was subject to the court's power; (2) Helmac's claim for the document destruction lies against the corporate entity, which the court has already sanctioned. Eric Roth merely acted in his capacity as an officer of the corporation. In support of this position, Roth cites Fed.R.Civ.P. 37(b)(2), which allows a court to sanction a corporate party for the recalcitrance of its officer; (3) the claim is barred by *res judicata,* because Helmac already sought and obtained sanctions from the Court on this matter.

Helmac claims the following: (1) a corporate officer is personally liable for torts committed by him even though he acted on behalf of a corporation; (2) Roth did not re-

quire notice that he should not commit a tort; (3) there is no *res judicata* because this claim is part of the same case; (4) Collateral estoppel applies from the opinion of July, 1992 in which this Court found Eric Roth ordered the acts of document destruction.

The Court finds that Roth's due process and notice arguments are invalid after *Chambers*. The Supreme Court upheld the sanctioning of Chambers for his activities during the weekend before the filing of the lawsuit when he arguably had no notice that he was subject to sanction for his activities. Moreover, Eric Roth was actively involved in a lawsuit that had already been filed at the time of the document destruction. His claims for lack of notice are therefore considerably weaker than Chambers'.

The Court finds that neither *res judicata* nor collateral estoppel disposes of this matter. Res judicata remains inapplicable to a different proceeding in the same case. As to collateral estoppel, the prior order of this Court states in pertinent part:

> Having reviewed the testimony, I believe the record clearly establishes that documents were withheld. I think the testimony of the Roths and David Brown must be disregarded.

814 F.Supp. 560 at 568.

> I am convinced that Eric Roth felt threatened by the documents that existed, and with a dim view towards the American litigation process, felt emboldened to withhold those documents which threatened him.

*Id.*, at 570.

The Court will not revisit those facts that it decided under the law of the case doctrine. It will provide Eric Roth with the opportunity to testify or provide other witnesses at an evidentiary hearing that focuses on his role in the document destruction process and the appropriateness of sanctions against him. Whether or not due process requires this additional hearing, the Court's view of fairness requires it. The Court will *not* entertain testimony, however, that attempts to rebut its prior findings, and the Court will consider attempts to use the hearing for this purpose to constitute a waiver of the right to a hearing.

A status conference will be held on June 14, 1993 at 2:30 p.m. to establish the date and length of the hearing.

SO ORDERED.