******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# DE ANN MAURICE *v.* CHESTER HOUSING ASSOCIATES LIMITED PARTNERSHIP ET AL.
## (AC 41741)

DiPentima, C. J., and Lavine and Moll, Js.

*Syllabus*

The plaintiff in error, W, a general and managing partner of the named defendant in the underlying action, brought this writ of error to challenge the trial court's imposition of sanctions against him for bad faith litigation misconduct. During the course of the underlying litigation, W sent an inappropriate e-mail of a harassing nature to R, counsel for the defendant in error. R reported the incident to the police, who warned W not to contact R again, and, for the next year, the underlying action proceeded toward trial. Immediately before opening statements were to begin, W, while standing outside the courtroom, made an inappropriate comment of a sexual nature about R that was loud enough to be heard by R and others present. Immediately thereafter, R made an oral motion for sanctions. Following a hearing, the court granted the motion, concluding that W's conduct was in bad faith and was intended to harass R in order to gain an advantage in the litigation, and awarded to the defendant in error attorney's fees in an undetermined amount, to be decided after a motion for attorney's fees was filed and a hearing held. On W's appeal to this court, *held*:

1. W could not prevail on his claim that the trial court exceeded the scope of its authority by awarding attorney's fees against him as a nonparty for his out-of-court conduct; it is well established that a trial court has the inherent authority to impose sanctions, including the award of attorney's fees, for both in-court and out-of-court conduct that abuses the judicial process, and although W was not a party to the underlying action, the trial court had the inherent power to sanction W for his bad faith litigation misconduct as a real party in interest, as W, being a general and managing partner of the named defendant in the underlying action, had a substantial interest in the outcome of the litigation and had substantially participated in the underlying proceedings, such that the award of attorney's fees against him for his out-of-court bad faith litigation misconduct was proper.

2. The trial court did not abuse its discretion in awarding attorney's fees as a sanction against W for his out-of-court conduct; contrary to W's claim, the trial court was not required to find that W's bad faith conduct had an effect on the outcome of the litigation in order to award attorney's fees, and given that W did not contest the court's factual finding that his conduct was intended to threaten, harass and intimidate R to gain an advantage in the litigation, that no exact award had yet been given and that any such award may be appealed, it was not an abuse of discretion for the trial court to determine that an award of attorney's fees was an appropriate sanction against W in this case for W's bad faith litigation misconduct.

Argued November 26, 2018–officially released February 26, 2019

*Procedural History*

Writ of error from the order of the Superior Court in the judicial district of New London, *Vacchelli, J.*, granting the defendant's motion for sanctions, brought to the Supreme Court, which transferred the matter to this court. *Writ of error dismissed.*

*Michael P. Carey*, with whom, on the brief, was *Daniel L. King*, for the plaintiff in error (Douglas Williams).

*Kelly E. Reardon*, for the defendant in error (De Ann Maurice).

*Opinion*

LAVINE, J. The plaintiff in error, Douglas Williams, brings this writ of error after the trial court sanctioned him for bad faith litigation misconduct and determined that, following further proceedings, attorney's fees shall be awarded to the defendant in error, De Ann Maurice. In his writ, he claims that (1) the trial court acted outside of the scope of its authority and (2) even if the court had such authority, it abused its discretion by determining that an award of attorney's fees was an appropriate sanction against him for out-of-court conduct when he was not a party to the underlying matter. We dismiss the writ of error.

The following facts and procedural history are relevant to Williams' claims. The underlying action was a premises liability case brought in January, 2015, by the defendant in error against the defendants, Chester Housing Associates Limited Partnership (partnership), MJKH Property Services, LLC, and Something Natural, LLC, which resulted in a verdict for the defendants. Williams is a general partner and the managing partner in the partnership but was not a defendant in the underlying matter. On January 15, 2016, at 11:02 p.m., Williams sent an inappropriate e-mail to the defendant in error's counsel, Kelly E. Reardon.[1] After receiving the e-mail, Reardon reported it to the police, who warned Williams not to contact Reardon again. For the next year, the litigation proceeded toward trial.

On April 27, 2017, while Reardon and others were standing in a hallway outside the courtroom immediately before opening statements were to begin, Williams stated to an unidentified individual, loud enough to be heard by those present, that he wanted Reardon to "sit on his fucking head." Shortly thereafter, Reardon reported to the court what had transpired and made an oral motion for sanctions. The court immediately held a hearing on the motion for sanctions,[2] which continued on May 3, 2017,[3] delaying the start of trial. On May 3, 2017, after the hearing, the court granted the motion and awarded the defendant in error attorney's fees in an undetermined amount, to be decided after a motion for attorney's fees was filed and a hearing held.[4]

In its oral decision, the trial court found that the purpose of Williams' e-mail "was obviously to threaten [Reardon], harass her, intimidate her, which the court believes was done for the purposes of getting some advantage in the case, to rattle her so that she'd do a poor job in representing her client, to scare her to get her to drop the case." As to the statement made in the hallway, the court found that "considering the context and the purpose, which was essentially a sexual harassment of [Reardon] to try to scare her and rattle her, and obviously had that exact effect because during the April 27 hearing when the motion was made, . . . Rear-

don was obviously very upset, almost in tears, and so he accomplished his purpose to try to knock her off her ability to proceed in the case, and to cause her distress for a litigation advantage." The court concluded that "these tactics were without any color of propriety and they were taken in bad faith . . . ." These factual findings are not contested.

On January 31, 2018, Williams filed a writ of error with our Supreme Court, which transferred it to this court on June 5, 2018.[5]

I

Williams, asserting that his conduct did not occur in the courtroom itself or in the court's presence, first claims that the trial court exceeded the scope of its authority by awarding attorney's fees for out-of-court conduct by a nonparty. Specifically, he argues that the inherent power of the judiciary does not allow for the sanctioning of nonparties for out-of-court conduct. We disagree.

As a threshold matter, we address the standard of review. In the present case, the issue before us is whether the trial court properly determined that it had the inherent authority to impose sanctions for bad faith litigation misconduct against Williams. "Because this presents a question of law, our review is plenary." *Burton* v. *Mottolese*, 267 Conn. 1, 25, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004).

"It has long been understood that [c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. . . . For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. . . . These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. . . .

"[I]t is firmly established that [t]he power to punish for contempts is inherent in all courts. . . . This power reaches both conduct before the court and that beyond the court's confines, for [t]he underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial. . . .

"Because of their very potency, inherent powers must be exercised with restraint and discretion. . . . A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the

judicial process. . . . [O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion. . . . Consequently, the less severe sanction of an assessment of attorney's fees is undoubtedly within a court's inherent power as well." (Citations omitted; internal quotation marks omitted.) *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 43–45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

"As a substantive matter, [t]his state follows the general rule that, except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable [attorney's] fee from the loser. . . . That rule does not apply, however, where the opposing party has acted in bad faith." (Citations omitted; internal quotation marks omitted.) *Maris* v. *McGrath*, 269 Conn. 834, 844, 850 A.2d 133 (2004).

It is well settled that this bad faith exception applies both to counsel and parties. Id., 845. Williams argues that this exception, however, does not extend to nonparties under any circumstance. We are unpersuaded. Such a bright line approach that focuses only on the distinction between party and nonparty fails to take into account factual circumstances and situations in which a nonparty who has a close relationship with the litigation could, in bad faith, abuse the judicial process to the same degree and effect as a party and interfere with the orderly functioning of the court. Notably, the United States Supreme Court could have made such a bright line rule between parties and nonparties when it upheld sanctions against a person for his fraudulent and bad faith conduct before and after he became a party, but it chose not to do so.[6] See *Chambers* v. *NASCO, Inc.*, supra, 501 U.S. 36–37, 50–51 (order requiring sole shareholder of company operating television station to pay attorney's fees and expenses totaling almost $1 million upheld as inherent power of court). Yet, the inherent power of the judiciary is not absolute and is subject to limitations to protect against abuse or unduly harsh punishment. Id., 44–47. To that end, we find persuasive the reasoning in *Helmac Products Corp.* v. *Roth (Plastics) Corp.*, 150 F.R.D. 563 (E.D. Mich. 1993) (*Helmac*), and adopt the test articulated therein.

In *Helmac*, the federal district court considered whether sanctions were proper against a nonparty corporate officer who was responsible for the destruction of documents that were responsive to a discovery request. Id., 564. In analyzing the issue, the court noted that "in the absence of the bright-line party—non-party distinction . . . courts must adopt a new boundary to limit the imposition of sanctions." Id., 566. The court reasoned that "the Court's power to sanction cannot possibly extend to everyone who interferes with litigation before the court," otherwise "the power to sanction

would be so wide that it would be unenforceable." Id., 567. The court found, however, that in certain situations, the courts "should also have the power to sanction [a] corporate officer." Id., 568.

The court stated that "[t]he reasons for doing so are plain: the individual [can be] as much involved in the litigation as any party would be, and his participation in [certain conduct can be] tantamount to a direct snubbing of the Court's authority by that individual. In some circumstances, a corporate entity may have depleted assets, and an individual may avoid the penalty for his actions by hiding behind the corporate veil. This avoidance is not warranted. Logically, it seems incongruous for the Court not to be able to impose a penalty upon the individual." Id. The court concluded that "a rigorous application of a two-part test will provide the least possible power adequate to the end proposed. . . . To be subject to the Court's inherent power to sanction, a non-party not subject to court order must (1) have a substantial interest in the outcome of the litigation and (2) substantially participate in the proceedings in which he interfered. This test . . . effectively limit[s] the scope of the Court's inherent power to sanction to those individuals who were either (1) parties, (2) subject to a court order, or (3) real parties in interest."[7] (Citations omitted; internal quotation marks omitted.) Id.

Applying the *Helmac* test to the facts of the present case, we conclude that the court had the inherent power to sanction Williams for his bad faith litigation misconduct as a real party in interest. Williams is a general partner and the managing partner of the partnership and, thus, had a substantial interest in the outcome of the litigation and had substantially participated in the proceedings.[8] It follows, therefore, that the court had the inherent power to sanction him for out-of-court bad faith litigation misconduct and award attorney's fees, as the court's inherent power "reaches both conduct before the court and that beyond the court's confines," and "an assessment of attorney's fees is undoubtedly within a court's inherent power . . . ." *Chambers* v. *NASCO, Inc.*, supra, 501 U.S. 44–45. We, therefore, conclude that it is within the court's inherent authority to award attorney's fees against Williams for his out-of-court bad faith litigation misconduct.[9]

## II

Williams' second claim is that even if the court's inherent powers include the imposition of a sanction on a nonparty for bad faith litigation misconduct, the trial court abused its discretion by authorizing an award of attorney's fees as a sanction against him for out-of-court conduct. Specifically, Williams argues that the sanction was an abuse of discretion, as there was no evidence or allegation that his conduct affected the outcome of the litigation.[10] We disagree.

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital*, 304 Conn. 754, 815, 43 A.3d 567 (2012).

"[S]ubject to certain limitations, a trial court in this state has the inherent authority to impose sanctions . . . for a course of claimed dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated. . . .

"It is generally accepted that the court has the inherent authority to assess attorney's fees when the . . . party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. . . . This bad faith exception applies, not only to the filing of an action, but also in the conduct of the litigation. . . . Moreover, the trial court must make a specific finding as to whether counsel's [or a party's] conduct . . . constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers to impose attorney's fees for engaging in bad faith litigation practices." (Citations omitted; internal quotation marks omitted.) *Maris* v. *McGrath*, supra, 269 Conn. 844–45.

"[A] litigant seeking an award of attorney's fees for the bad faith conduct of the opposing party faces a high hurdle." *Berzins* v. *Berzins*, 306 Conn. 651, 662, 51 A.3d 941 (2012). "To ensure . . . that fear of an award of [attorney's] fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . ." (Internal quotation marks omitted.) *Maris* v. *McGrath*, supra, 269 Conn. 845. Thus, "in order to impose sanctions pursuant to its inherent authority, the trial court must find *both* [1] that the litigant's claims were entirely without color *and* [2] that the litigant acted in bad faith." (Emphasis in original.) *Berzins* v. *Berzins*, supra, 663.

As an initial matter, we note that Williams does not contest the court's factual findings that his conduct was intended to "threaten [Reardon], harass her, intimidate

her . . . for the purposes of getting some advantage in the case, to rattle her so that she'd do a poor job in representing her client . . . to cause her distress for a litigation advantage" and that "these tactics were without any color of propriety and they were taken in bad faith . . . ." Therefore, the question of whether Williams' conduct was properly deemed litigation misconduct is not before this court. Rather, Williams claims that the court abused its discretion by authorizing an award of attorney's fees against him and focuses his argument on the fact that he is a nonparty and was sanctioned for out-of-court conduct.

Williams appears to argue that the trial court's abuse of discretion lies in the absence of a finding of an *effect* on the outcome of litigation. In doing so, he misconstrues the findings needed for the bad faith exception to apply. Although the court must find that the sanctioned conduct was "entirely without color" and was done "for reasons of harassment or delay or for other improper purposes," it does not need to make a finding that the conduct had an effect on the outcome of the case. *Maris* v. *McGrath*, supra, 269 Conn. 845.

Williams also argues that the court abused its discretion by extending sanctions to cover his conduct when the court should only award such sanctions with restraint and discretion. He argues that "[s]anctions for bad faith litigation have been consistently and historically applied based on meritless pleadings; [wilful] violations of court orders; and filings causing harassment or delay," and he attempts to distinguish his conduct by stating that "the specific focus for bad faith litigation is on litigation tactics," rather than out-of-court conduct. Although we agree that historically, bad faith litigation sanctions have been applied to situations that differ from the present case, this argument fails to take into account that the conduct under consideration here is highly atypical and flies in the face of "the decorum and respect inherent in the concept of courts and judicial proceedings." *Illinois* v. *Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970).[11] Most detrimental to Williams' argument, however, is the fact that he does not raise as an issue the court's factual finding that his actions constituted bad faith litigation misconduct. As the court found that Williams' conduct was intended to harass Reardon in order to gain a litigation advantage, a finding that is left unchallenged by Williams, we see no reason to conclude that a litigation sanction in the form of an award of attorney's fees was a manifest abuse of discretion. In the case of imposing attorney's fees for bad faith litigation misconduct, a court has the "inherent power to police itself, thus serving the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his [or her] opponent's obstinacy." (Internal quotation marks omitted.) *Chambers*

v. *NASCO, Inc.*, supra, 501 U.S. 46.

In that same vein, we emphasize that the court should indeed exercise restraint and discretion in awarding attorney's fees, given the potential for abuse when a court relies on its "inherent authority," carefully scrutinize the documentation submitted in support of the fee request, and award only reasonable attorney's fees directly resulting from the misconduct. See id., 44.[12]

"[The United States Supreme Court] has made clear that such a sanction [of attorney's fees pursuant to a court's inherent powers] must be compensatory rather than punitive in nature. . . . In other words, the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior. . . .

"That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue. Compensation for a wrong, after all, tracks the loss resulting from that wrong. So . . . a sanction counts as compensatory only if it is calibrate[d] to [the] damages caused by the bad-faith acts on which it is based. . . . A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that— to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party.

"That kind of causal connection . . . is appropriately framed as a but-for test: The complaining party . . . may recover only the portion of his fees that he would not have paid but for the misconduct. . . .

"This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Goodyear Tire & Rubber Co.* v. *Haeger*, U.S. , 137 S. Ct. 1178, 1186–87, 197 L. Ed. 2d 585 (2017).

"The essential goal in making a remedial award is to do rough justice, not to achieve auditing perfection, and, thus, the award may be based on reasonable estimations of the harm caused and the trial court's own superior understanding of the litigation . . . . The trial court's discretion, however, is not limitless. If the court elects to provide a remedial award, then the value of the award may not exceed the *reasonable value* of the injured party's losses. . . . Although a trial court may choose to award less under the circumstances of a particular case, a decision to order an award greater than the party's loss would exceed the award's remedial

purpose." (Citations omitted; emphasis added; internal quotation marks omitted.) *O'Brien* v. *O'Brien*, 326 Conn. 81, 104–105, 161 A.3d 1236 (2017).

Without a precise monetary award of attorney's fees to review, we cannot conclude that an award of *reasonable* attorney's fees would be an abuse of discretion.[13] An award of attorney's fees disproportionate to the harm caused by Williams' conduct, or based on excessive amounts of time expended on preparation or research, however, *would* abuse that discretion. Given that no exact award has yet been given and that any such award may be appealed, we conclude that the trial court did not abuse its discretion in determining that an award of attorney's fees is an appropriate sanction against Williams in this case.

The writ of error is dismissed.

In this opinion the other judges concurred.

[1] The e-mail stated:

"Welcome to my web said the spider to the fly. Am I the fly or are you? I think I'm the fly. Fa[ir] enough! What would [you] like? What would you want me to do lie? I love women like you because you young girls have a direction that is 250% of what America is . . . about.

"Would you like to meet for coffee? Gee never had that one? Call if you want . . . . The people in the case are not very nice people. This is not for just shits and giggles. Coffee would be great! I have nothing against your people. I think [you're] great. [It's] just coffee. Have to [drive] 75 miles just to [en]joy a cup.

"Guess who is stupid? Me ok! You make my wheels turn. You are one sharp [woman]. Bet [you're] on top of your game. Did some MF say ATTORNEY. Call me to help me please.

"Thank you.

"[B]eauty is in the eye of me, [o]h ya.

"Not suppose to say this stuff so I will not say [you're] a fox!!!! But you are. You asked me to call you and you didn't give me your cell.

"Old Goat . . . ."

[2] The motion was not based on a claim of criminal or civil contempt.

[3] Williams was represented by counsel at the May 3, 2017 hearing.

[4] We note that although the e-mail was brought up in the evidentiary hearing and discussed in the court's ruling, it was Williams' statement immediately outside of the courtroom that precipitated the motion for sanctions, not the e-mail, which was received more than a year beforehand.

[5] The writ of error was properly filed in the Supreme Court. See General Statutes § 51-199 (b) (10) (writs of error to be brought to Supreme Court); Practice Book § 72-1 (1) (a) (same). While the writ of error was pending before the Supreme Court, the defendant in error, De Ann Maurice, filed a motion to dismiss the writ, claiming that the Supreme Court lacked jurisdiction over it because the trial court did not render a final judgment when, on May 3, 2017, it ordered that Williams be sanctioned and that there be further proceedings to determine the amount of the concomitant award of attorney's fees. See Practice Book § 72-1 (a) (writ of error may be brought "from a final judgment of the [S]uperior [C]ourt"). The Supreme Court denied the motion to dismiss and subsequently transferred the writ of error to this court. See General Statutes § 51-199 (c) (Supreme Court may transfer cause from itself to Appellate Court).

On September 4, 2018, prior to oral argument of this case before this court, our Supreme Court released its decision in *Ledyard* v. *WMS Gaming, Inc.*, 330 Conn. 75, 191 A.3d 983 (2018). In *Ledyard*, the Supreme Court ruled that the Appellate Court wrongly dismissed, for lack of a final judgment, an appeal taken from a judgment that determined only that the defendant was liable for attorney's fees. The Supreme Court ruled that the trial court's determination that the defendant was liable for attorney's fees was an appealable final judgment, despite the fact that the amount of those fees had not yet been determined. The Supreme Court found that, in dismissing the appeal, the Appellate Court had wrongly relied on a footnote in *Paranteau* v. *DeVita*, 208 Conn. 515, 524 n.11, 544 A.2d 634 (1988), for the proposition

that a trial court does not render a final judgment as to attorney's fees until it conclusively determines the amount of those fees. The Supreme Court held that the language in *Paranteau* applies only to "supplemental postjudgment awards of attorney's fees." *Ledyard* v. *WMS Gaming, Inc.*, supra, 90.

Here, the order that Williams be sanctioned and that he pay attorney's fees is a final judgment under *Ledyard*—notwithstanding the fact that the trial court has yet to determine the amount of those fees—because it does not constitute a supplemental postjudgment award of attorney's fees.

[6] Our Supreme Court also declined to make such a ruling in *Allstate Ins. Co.* v. *Mottolese*, 261 Conn. 521, 523–25, 803 A.2d 311 (2002), in which the plaintiff in error brought a writ of error after the court sanctioned the insurer of the defendant in the underlying motor vehicle action for not increasing its settlement offer in a pretrial conference. Although the case did not involve sanctions pursuant to the court's inherent powers, the plaintiff in error similarly claimed that "the trial court's order of sanctions against it [was] void because it [was] not a party to the underlying action . . . ." Id., 523. Our Supreme Court, however, did not rule that sanctions could not be levied against a nonparty and, instead, reversed the order of sanctions on another ground. Id.

[7] This test has been applied in cases such as *In re White*, United States District Court, Docket No. 2:07CV342 (MSD), 2013 WL 5295652, *70 (E.D. Va. September 13, 2013) (nonparty who filed motion to quash had sufficient interest and participation in litigation to be subject to court's inherent power; sanctions for blog postings, however, were unwarranted as postings were "protected speech, beyond the confines of the Court, that did not apparently interfere with the administration of justice"); *Adell Broadcasting Corp.* v. *Ehrlich*, Docket Nos. 299061 and 299966, 2012 WL 468258, *9–10 (Mich. App. February 14, 2012) (president and director of companies who filed complaint on their behalf had sufficient interest and participation in litigation to be subject to court's inherent power; court erred by imposing sanctions without giving notice and opportunity to be heard); and *In re VIII South Michigan Associates*, 175 B.R. 976, 984 (Bankr. N.D. Ill. 1994) (nonparty expert witness did not have substantial interest or participation in proceedings to be subject to court's inherent authority under *Helmac*).

[8] Williams was deposed twice, acted as the representative of the partnership throughout the legal proceedings, and sat at counsel table prior to the imposition of an additional sanction that required him to sit in the back of the courtroom. Notably, in the initial hearing on sanctions, the partnership's counsel acknowledged that Williams was a real party in interest, as he argued that Williams *was* a party. He stated: "[The plaintiff in error] is a party, Your Honor, and until this is resolved I—I don't think Your Honor can remove him from the courtroom where he has been—his business has been sued. He is a party. . . . [h]e's the sole representative of the party."

[9] This conclusion is further supported by *Corder* v. *Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994), in which the United States Court of Appeals for the Ninth Circuit concluded that "a court may impose attorney's fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices."

[10] Reardon first suggested a $10,000 fine against Williams at the April 27 hearing, which was followed by attorney Robert Reardon, who represented Kelly Reardon and the defendant in error at the May 3 hearing, urging that the court enter a default judgment against the defendant partnership on the issue of liability or impose a $50,000 fine. The trial court, noting that the proceeding was for litigation misconduct and doubting that it had the authority to issue a fine, decided that an award of attorney's fees was appropriate. In her June 1, 2017 motion for attorney's fees, the defendant in error requested fees in the amount of $37,051.50.

[11] Although the United States Supreme Court in *Illinois* v. *Allen*, supra, 397 U.S. 343, held that a self-represented defendant's expulsion from a courtroom for disruptive conduct did not violate his constitutional rights, the reasoning of the Supreme Court as to the requisite decorum of judicial proceedings holds true here.

"It is essential to the proper administration of . . . justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with [improper conduct] must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." Id., 343. "[O]ur courts, palladiums of liberty as they are, cannot be treated disrespectfully

with impunity." Id., 346.

With this same reasoning, Williams' argument that his conduct was protected by the first amendment to the United States constitution fails. See *United States* v. *Grace*, 461 U.S. 171, 178, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983) (court building and grounds, excluding the public sidewalks, are nonpublic forums "not . . . traditionally held open for the use of the public for expressive activities" and restrictions must only be "reasonable in light of the use to which the building and grounds are dedicated").

[12] An award of attorney's fees should be awarded in proportion to the harm and additional expense that occurred as a result of the sanctioned conduct. In *Maris*, our Supreme Court upheld an award of attorney's fees in the amount of $15,218.86, against a party who, in bad faith, brought meritless claims and repeatedly gave false testimony, leading to the trial court's conclusion that there was only one good faith litigant. *Maris* v. *McGrath*, supra, 269 Conn. 842–43.

In *Chambers*, the United States Supreme Court upheld an award of attorney's fees and expenses totaling $996,644.65 as G. Russell Chambers, the sanctioned individual, not only sought to deprive the court of jurisdiction by conveying the properties at issue into a trust but "devise[d] a plan of obstruction, delay, harassment, and expense sufficient to reduce [his opponent] to a condition of exhausted compliance . . . ." *Chambers* v. *NASCO, Inc.*, supra, 501 U.S. 37–41.

In the present case, Williams' statement and conduct outside of the courtroom resulted in the additional expense of a two day hearing. We caution the court to limit an award to *reasonable* attorney's fees that is proportional to the harm and expense caused by Williams' actions.

[13] We note that the record is bereft of any indication that Reardon was unable to take part in the trial. The record nonetheless reflects that Williams' statement did interfere with the trial and occasioned additional legal fees because it so upset Reardon and required an immediate judicial response and a hearing, which delayed the start of trial from April 27, 2017, until May 4, 2017.

_____